IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEREK L. HENDRICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:06CV799 |
| | ) |
| SHERIFF B.J. BARNES and DR. SAMI HASSAN, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Motions to Dismiss by Defendant Barnes (docket no. 14) and by Defendant Hassan (docket no. 18). Plaintiff, proceeding *pro se*, has responded in opposition to the motions, and in this posture the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore the motions must be dealt with by way of recommendation. For the reasons stated herein, it will be recommended that the court grant Defendants' motions to dismiss on the ground that Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

**STATEMENT OF THE CASE**

On September 19, 2006, Plaintiff, an inmate in custody in the North Carolina Department of Corrections ("DOC") and a former pretrial detainee at the Guilford

County Detention Center ("GCDC"), filed this *pro se* action under 42 U.S.C. § 1983, alleging deliberate indifference to safety, deliberate indifference to a serious medical need, and unreasonable search and seizure. Plaintiff has named as Defendants B.J. Barnes, Sheriff of Guilford County, and Dr. Sami Hassan. For relief, Plaintiff has requested compensatory damages, punitive damages, and injunctive relief. On September 25, 2006, this court ordered that the complaint be served without prepayment of filing fees with certain conditions. On October 25, 2006, this court ordered that monthly payments be made from Plaintiff's prison account until the filing fee is paid in full. On December 18, 2006, process was served on Defendants Barnes and Hassan. Defendant Barnes filed a motion to dismiss on February 2, 2007. Defendant Hassan filed a motion to dismiss on February 6, 2007. Plaintiff has filed responses to both motions.

**FACTUAL ALLEGATIONS**

Plaintiff alleges that on September 20, 2003, he was attacked and beaten by fellow inmates while he was a pretrial detainee at GCDC. According to Plaintiff, the attack was the result of jail overcrowding and under staffing and inadequate training of jail staff. Plaintiff alleges that he "suffered great pain of body and mind including facial pain and pain in the areas of his ribs, and legs." (Complaint p. 5). He also alleges that, although he requested medical care and x-rays, he was not seen by a doctor until five days after the alleged attack. According to Plaintiff, Defendant

2

Hassan examined him on September 26, 2003 and October 7, 2003,[1] but Dr. Hassan "refused to provide reasonable treatment or care" and "remained deliberately indifferent to his serious medical needs." Plaintiff alleges that on October 8, 2003, he was examined by a dentist but no x-rays were made. He alleges that he suffers "breathing difficulties and great pain of body and mind." Plaintiff also complains that he was charged ten dollars for each of his visits with Dr. Hassan and the dentist.

Plaintiff alleges three causes of action: (1) deliberate indifference to safety and welfare of pretrial detainees; (2) deliberate indifference to serious medical need; and (3) unreasonable seizure of $30 from his prison account without due process of law.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.[2]  42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement is mandatory. *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910,

---

[1] Plaintiff is not consistent with his recitation of dates. For example, on the Complaint form, he alleges that the attack occurred in September 2003, yet on the attached pages following the form Complaint, he mixes in the years 2003 and 2006. The court assumes that Plaintiff meant to be consistent and allege events during calendar year 2003.

[2] In relevant part, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

919 (2007);[3] *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). It is clear, then, that the PLRA requires exhaustion of all administrative remedies that are available to the inmate. *Woodford v. Ngo*, ___U.S. ___, 126 S. Ct. 2378 (2006); *Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Abney v. McGinnis*, 380 F.3d at 667 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Moreover, a plaintiff will not be excused from exhaustion because he is no longer at the facility where the complained of incident occurred. *See Santiago v. Meinsen*, 89 F. Supp.2d 435, 440-41 (S.D.N.Y. 2000) (dismissing action for failure to exhaust where the plaintiff's excuse for not bringing a grievance was his transfer to a different facility three weeks after the incident at issue); *cf. Woodford v. Ngo*, 126 S. Ct. at 2384-88 (explaining policy considerations behind exhaustion requirement and the necessity of a prisoner complying with "the system's critical procedural rules"). The reason behind such a rule is clear - to allow such a bypass would permit a prisoner to evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one and still gain access to a federal forum.

---

[3] In *Jones*, the Supreme Court's most recent decision on administrative exhaustion in the context of prisoner litigation, the Court held that "failure to exhaust is an affirmative defense under the PLRA" and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 921. As such, *Jones* is not specifically applicable here, where Defendants are arguing that Plaintiff failed to exhaust, not that he failed to affirmatively plead exhaustion in his complaint.

Here, Defendants have presented evidence that the GCDC has grievance procedures that are certified as being in accordance with § 1997e and that are made available to all inmates at GCDC.[4]  Plaintiff alleges in his § 1983 Complaint that he filed a grievance in this matter "requesting ... x-rays to determine extent of actual damage of multiple fractures." (Complaint p. 2).  He further alleges that he did not appeal any adverse decision because "Plaintiff being a pre-trial detainee Sheriff Dept. had no administrative appeal procedure." *Id.*  In his affidavit filed with his response to the motions to dismiss, Plaintiff states that he requested a grievance form and that he "was always told there was none." (Hendricks Aff. at 1 attached to docket no. 21).  He argues in his response that he was not provided with the form required under the grievance procedure at GCDC. (Pl. Resp. to MTD at 1).  Plaintiff attached to his affidavit what he alleges to be his request for a grievance form, dated October 8, 2003.

There are several fatal errors in Plaintiff's argument.  First, the form which Plaintiff has submitted as Exhibit A lists the inmate's name as "Nation Lynch" and there is no indication of any connection to Plaintiff.[5]  The form appears to be a

---

[4] The administrative grievance procedures of the Guilford County Sheriff's Office are nationally certified under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997e and have been certified since 1995.  *See* Williamson Aff. & Ex. 1 (docket no. 14-2).  Inmates are informed of the procedures when they are booked into the facility and can request a copy of the Inmate Handbook for additional information, or they may ask the officer on the floor how they can file a grievance.

[5] The caption of Plaintiff's complaint lists Plaintiff as "Derek Lynn Hendricks, aka Nation Lynch," but there is no indication anywhere else in the record that Plaintiff was also known as Nation Lynch.

5

request for x-rays and reads: "Doctor denies me for x-rays for my body - from incident - my nose is running with a fresh scent of blood - that is congestion - is trouble breathing." The response, signed by E. Warrick, RN, reads: "Mr. Lynch, you have been examined by the doctor and he does not feel x-rays are warranted at this time." On the line above the request for x-rays, a "request [for] a grievance form" is written, clearly in different ink from the request for x-rays. It is unclear to this court that the form attached to the affidavit was actually submitted by Plaintiff.

The grievance procedure in place at the GCDC allows for informal resolution of a complaint without a formal grievance being filed:

V. PROCEDURAL GUIDELINES

\*\*\*

D.  Informal Resolution: Generally, an informal resolution may resolve a complaint without a formal grievance being filed. The informal resolution process is initiated by the inmate. When there is an indication of a complaint, the officer or employee shall attempt a remedy for the inmate. If the officer or employee is unable to provide a satisfactory remedy for the complaint, an inmate request form will be issued to the inmate. If the inmate is not satisfied with the informal solution rendered through the use of the inmate request form, the formal grievance procedure may be utilized.

E.  Requesting Grievance Form: An inmate may request an inmate grievance form from the Shift Commander, who upon issuance, shall affix a date/time stamp to the form.

F.  Use of the inmate grievance form: When an inmate addresses a complaint that cannot be resolved with an informal resolution, the inmate may then file a formal grievance. The steps for filing a grievance are:

    1.  Request from the Shift Commanders an inmate grievance form.

(Def. Barnes Brief in support of Mot. to Dismiss, Affidavit of Captain C.J. Williamson, and Exhibit 1 to his Affidavit, Section G of the Grievance Procedures). The form attached to Plaintiff's affidavit was labeled an "inmate request form", an attempt to initiate informal resolution of an inmate's complaint. The GCDC grievance procedure clearly provides that an inmate may initiate the *formal* grievance procedure by requesting an inmate grievance form from the Shift Commander "if the inmate is not satisfied with the informal solution rendered through the use of this inmate request form." There is no indication that Plaintiff made such a request to the Shift Commander. The attempt to include the request on the inmate request form is unavailing.

The only grievance stated in the "Inmate Request Form," moreover, is that the inmate did not receive x-rays, the claim raised by Plaintiff in Count II of his Complaint. There clearly was no attempt to resolve his other complaints for deliberate indifference to the safety and welfare of pre-trial detainees (Count I) and for the unreasonable seizure of Plaintiff's funds without due process (Count III), and these claims have not been exhausted.

As for Claim II, the only claim which Plaintiff administratively pursued, there is no evidence that Plaintiff was prevented from filing a formal grievance after he was dissatisfied with the response to his informal inmate request. Under the grievance procedure in place at GCDC, to initiate the formal grievance procedure, Plaintiff would have to request an inmate grievance form from the Shift Commander, which

he did not do. His inclusion of the request on the inmate request form was not sufficient to begin the formal grievance procedure. His later attempt to bypass this requirement by saying that he requested a form but was told there was none and that there was no appeal procedure for pretrial detainees is simply not supported by the record. Plaintiff failed to follow proper procedures in grieving his claims. While it is true that some courts have excused an inmate's failure to exhaust when prison officials denied the inmate access to those remedies,[6] there is no evidence that such access was denied in this case. Rather, it appears that Plaintiff did not properly avail himself of the grievance procedure in place at GCDC by formally filing a grievance. *See Woodford v. Ngo*, 126 S. Ct. at 2387-88 (PLRA exhaustion requirement "demands compliance with an agency's deadlines and other critical procedural rules"). Because Plaintiff failed to properly exhaust his administrative remedies, this action should be dismissed without prejudice.

---

[6] *See, e.g., Abney*, 380 F.3d 663, 667 (2nd Cir. 2004) ("Defendants may also be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures."); *Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003) (excusing prisoner's failure to exhaust when prison officials refused to provide the necessary forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding that a prisoner need not exhaust remedies that prison officials' actions preclude the prisoner from pursuing because those remedies are not "available" within the meaning of 42 U.S.C. § 1997e(a)).

**CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that Defendant Barnes' Motion to Dismiss (docket no. 14) and Defendant Hassan's Motion to Dismiss (docket no. 18) on the grounds of non-exhaustion of administrative remedies be **GRANTED** and that this action be dismissed without prejudice**.**

                                                  _____
                                                 WALLACE W. DIXON
                                                 United States Magistrate Judge

Durham, North Carolina
May 7, 2007